## Fort Worth & Denver City Railway Company v. R. S. Hays.

### Decided May 23, 1908.

**Trial—Improper Argument.**

Argument and conduct of counsel for plaintiff in a damage suit against a railroad company, considered, and held to be so inflammatory and so often repeated in violation of the rule which requires counsel to confine themselves to the record, as to require a reversal of a judgment for the plaintiff.

Appeal from the District Court of Tarrant County. Tried below before Hon. Irby Dunklin.

*Spoonts, Thompson & Barwise,* for appellant.

*Wallace & Mount* and *McCart, Bowlin & McCart,* for appellee.

PRESLER, ASSOCIATE JUSTICE.—This was an action for personal injuries by a passenger and resulted in a verdict and judgment in his favor for seven thousand five hundred dollars, from which this appeal is prosecuted.

Just as the train left Wichita Falls it struck an engine standing on the main track at the coal chute, where it was being coaled, with such force as to throw appellee from the seat or arm of the seat occupied by him to the floor of the car, thereby producing, as alleged, a severe internal injury, termed by some of the expert witnesses, "chronic myelitis." This collision was alleged in the petition to have been produced through the negligence of the employes in charge of the passenger train. The evidence tended to prove, however, as was in effect alleged in the answer, that the collision was due to the inability of the employes in charge of the passenger train to discover the engine in time to prevent the collision, because it was a dark, cloudy morning and because of the black coal smoke and steam which the wind was driving in that direction from four or five other locomotives standing near the one being coaled.

There was no material conflict in the testimony as to the circumstances attending the collision, and it seems that appellee was the only person injured. As to the extent of his injuries the evidence was conflicting. The testimony of himself and his neighbors from Rockwall County, together with that of the doctors introduced by him, tending to show that he had sustained the internal injury of which he complained, and that it was of such character as to warrant the verdict, while the evidence of two doctors introduced by appellant, who examined him during the trial, tended to show that he was then in a normal condition, and had not suffered the internal injury of which he complained.

The errors are mainly assigned to the digressions and inflammatory remarks of counsel for appellee in the closing argument to the jury. This argument is set out in full in the stenographer's notes and we have carefully read and considered it in consultation. In some instances objections were raised to the remarks at the time they were made, whereupon the court promptly sustained the objections and afterwards instructed the jury to exclude them from their consideration. In some instances when objection was made and the matter excluded, counsel proceeded to discuss other matters not in the record in such manner as perhaps to discourage the efforts of counsel for appellant in making objections. It was facetiously suggested in oral argument before us that the complaint which counsel for appellant desired to present was not so much that counsel for appellee in his closing address to the jury had gone out of the record, as that he had never gotten into it, and the repeated digressions as set forth in the record lend coloring to this humorous suggestion. For instance, on the question of liability, counsel disclaimed negligence on the part of the engineer of the train, although that was the ground laid in the petition, but argued that the coaling of the engine on the main line was the grossest negligence, and that it should have been done on the side track, stating that "generally there is where they coal engines—do the coaling on side tracks," of which there was neither pleading nor proof. On the case as a whole and on the question of the measure of damages, the following were some of the exclamations made:

"Oh! how unfortunate it is for a poor man in humble circumstances if he gets into a fight with a corporation or a railroad."

"Four different times this plaintiff has been here knocking at the courthouse to try his lawsuit—his witnesses living in an adjoining county—his doctors living in an adjoining county."

"There isn't enough money in Tarrant County for me to stand before a jury of my country, where I have lived for thirty years, and defend a fake case."

With reference to the testimony of doctors, counsel declared that it had become so in this country that the testimony of doctors had become almost a stench to the nostrils in the courthouse; that a man could commit the bloodiest murder in the world, and if he had money he could prove that he was innocent; that doctors testified to opinions and you can not convict them for perjury; that if a man commits the bloodiest murder in the world and has money, he can bring doctors from the four quarters of the world and prove that he is insane; that a man may work and become rich, earn and accumulate his property, and when he becomes old and feeble and wills his property, someone comes in and contests his will in court, and the newspapers are full of illustrations of how the doctors, with so-called theories and hypotheses, will come into the courthouse for pay and give their judgment and opinion that a man was insane and not capable of devising his property.

Appellant's counsel had argued that one Dr. Sorrell, who had examined the appellee in connection with another doctor from Rockwall County, had not been produced. Responding to this counsel for appellee used this language: "Where is Dr. Sorrell? He has been here as a witness. We had him up here to court, trying to reach this case. Here are the witnesses. You come right to my office and I will satisfy you that it is not a fake, I said to Mr. Barwise, as the evidence develops, and Mr. Barwise was there and examined these witnesses—all of them. He talked to Dr. Sorrell—he was here, because four different times this case came up for trial. We did not have Dr. Sorrell here this time. He is a physician—the evidence develops—a physician for a railroad, and you (referring to the attorney for the defendant, Mr. Barwise) took him to your office and you talked with Sorrell." It is admitted that the statement that the attorney for appellant had taken him to his office and there talked with him was not true, but it is insisted that that is immaterial since he had talked to the witness in the office of counsel for the appellee. But perhaps the jury may have thought from this statement that the counsel for the railway had had another talk with him in its own office, which might account for his not being produced.

It is insisted that some of the objectionable language quoted above was provoked by the merciless assault made by counsel for appellant in his argument on appellee as a malingerer and on his case as a fake case, the language of which address, however, is not set out.

After devoting considerable time and consideration to this, the main feature of the appeal, we have finally concluded that the rule which requires counsel to confine himself to the record was so repeatedly trampled under foot by him and in some instances the language employed was so inflammatory that we would not be warranted in holding that the argument did not have the desired effect.

The foregoing opinion in this case was prepared by Ex-Associate Justice Stephens, prior to his retirement from the bench, with the full concurrence of the other members of the court; it was not, however, handed down by Judge Stephens, but left as "memoranda" with the following indorsement: "Not being entirely satisfied with this disposition the case is left for my successor." After examination at considerable length of the record and the authorities cited, and upon full consultation with the other members of the court, I am constrained to adopt the foregoing opinion and to hold that the judgment should be reversed and the cause remanded for a new trial, and it is so ordered.

*Reversed and remanded.*